(Reap. Dec. 8480)

## DOMINICK BUTTI v. UNITED STATES

Entry No. 774934, etc.

(Decided September 16, 1955)

*Brooks & Brooks* (*Thomas J. McKenna* of counsel) for the plaintiff.
*Geo. Stephen Leonard,* Acting Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector,* trial attorneys), for the defendant.

OLIVER, Chief Judge: These appeals for reappraisement have been limited to certain accordions imported from Italy. Of the four shipments in question, one was exported in October 1950 (reappraisement 207320–A), two were exported in November 1950 (reappraisements 207322–A and 207991–A), and the remaining one was exported in December 1950 (reappraisement 207321–A). The merchandise was entered at the invoice unit values, which were advanced by the appraiser.

Plaintiff contends that the accordions in question are "shopworn and damaged," that such merchandise had a foreign value and an export value, and that such statutory values therefor were the entered values. Defendant, on the other hand, contends that there is no foreign value for merchandise such as or similar to that in question, that the proper basis for appraisement of the present merchandise is export value, and that such statutory value is the appraised unit value of each of the several items in question.

Plaintiff introduced the oral testimony of one witness and also offered certain documentary evidence in the form of affidavits.

Plaintiff's witness is the manager of the Ace Accordion Co. of New York City, a position he has occupied since 1945. His testimony is limited to the accordions contained in case 1–F–76, covered by entry 825649 (reappraisement 207991–A), which he examined in the presence of customs officials and while the merchandise was still in customs custody. Referring particularly to the eight accordions that were in the said case 1–F–76, the witness stated that they were old models, somewhat obsolete in style, a condition that reduces the value of the instruments and renders them less salable. The witness further testified that the accordions he examined had many keys out of line and that the bodies and cases of the instruments had discoloration imbedded therein. The witness also explained the meaning of the various descriptive numbers appearing on the invoices to identify the different models or styles of accordions.

In an affidavit (plaintiff's collective exhibit 1), executed by Antonio Butti, the affiant testifies that he is the sole owner of Italfisa, the exporter of the accordions in question, and that at the time of his purchase of Italfisa, in 1948, he acquired a stock of "approximately 260 old, damaged or unfinished accordions." Affiant testifies further that, during the months of October, November, and December 1950, he sold to the Dominick Butti Accordion School & Repairs of New York City, from the stock he acquired at the time of his purchase of Italfisa, 35 accordions of different types that are set forth in a list embodied in the said affidavit. The witness further testifies that "during the summer and fall of 1950 he freely offered for sale the shop-worn and damaged accordions, acquired at the time of purchase of Italfisa, in the market of Castelfidardo and in other markets in Italy for home consumption and for export to all countries, including the United States," at prices, the same as those shown for the different styles of accordions itemized in the affidavit, and that, from his knowledge of and experience in the accordion markets of Italy, he knows that no other shopworn and damaged accordions, similar to those identified in the affidavit, were "offered for sale during the summer, fall and winter of 1950."

The affidavit just reviewed (exhibit 1, *supra*) refers to the second affidavit offered by plaintiff (plaintiff's collective exhibit 2) as "a sworn statement from Vignoni Giovanni, one of the purchasers of such accordions." In the affidavit (exhibit 2, *supra*), the affiant states that "Upon the request of Mr. Antonio Butti, I * * * herewith declare that in the period from *June to December, 1949* [italics supplied], I purchased from the said Mr. Butti the following accordeons [sic]," itemized in a list embodied in the affidavit.

It will be noted that the period of time stated in plaintiff's second affidavit (exhibit 2, *supra*), i. e., "from June to December, 1949," is 1 year earlier than the shipments in question and the alleged sales referred to in plaintiff's first affidavit (exhibit 1, *supra*).

Defendant's evidence, all of which is documentary, is a disclosure of the close relationship, as well as the unusual course of business followed, between the Italian exporter and the American importer of the accordions in question. To outline in detail all of defendant's evidence would unduly lengthen this decision. Reference will be made to only such parts of the evidence as is deemed necessary for a proper disposition of the issues before me.

An "AGREEMENT" (defendant's exhibit A), entered into on June 29, 1948, between Antonio Butti, hereinabove identified, and Dominick Butti, the plaintiff herein, shows that the said Italian exporter is the father of the importer of the merchandise under consideration and that they were, at the time of the execution of the "AGREEMENT" (exhibit A, *supra*), "copartners in the musical instrument business at 154 Park Row, Manhattan, New York, under the trade name of A. Butti and Son Accordion School." Their status, as partners in the accordion business, is reflected in a series of letters between them (defendant's exhibits B, C, and collective exhibit D). The collection of letters can be aptly described as a chain of correspondence, discussing the problems and difficulties encountered by the exporter and the importer as dealers in accordions. The most important disclosure therefrom, so far as pertinent herein, is that, in all of the transactions relating to the exportation of accordions to the United States, the foreign exporter, Italfisa, sold exclusively to the plaintiff herein, at special prices, and without any attempt to meet the statutory requirements governing the valuation of imported merchandise. There is also some evidence (letter of January 4, 1951—part of defendant's collective exhibit D) showing that the accordions in question were new instruments, and not old and shopworn, as alleged by plaintiff.

It should be emphasized, at this point, that the statute (28 U. S. C. § 2633) provides that "The value found by the appraiser shall be presumed to be the value of the merchandise" and that "The burden shall rest upon the party who challenges its correctness to

prove otherwise." Inherent in the statutory presumption of correctness that is attached to the appraiser's action is the existence of every fact that is necessary to sustain the appraised value. *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States*, 28 C. C. P. A. (Customs) 19, C. A. D. 118; *E. I. du Pont de Nemours & Co.* v. *United States*, 27 C. C. P. A. (Customs) 146, C. A. D. 75. The burden imposed upon the plaintiff in a reappraisement case was set forth in *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276, as follows:

> The issue is not whether the value returned by the appraiser is the proper dutiable value of the merchandise, but whether there is (a) a foreign value or/and (b) an export value, and, if both, which is the higher, and the importer, having been the appealing party in the first instance, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co.* v. *United States, supra.* * * *

On the basis of the present record, plaintiff has failed to establish his claimed values as the proper values for appraisement of the accordions under consideration. First of all, the restriction exercised by the foreign exporter upon himself, by confining his sales for export to the United States to the plaintiff herein, is an absolute bar for finding plaintiff's entered values as the export values, within the statutory definition of "export value," in section 402 (d) of the Tariff Act of 1930. *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. (Customs) 131, C. A. D. 262. Because such a course of trade definitely removes statutory export value as a basis for appraisement of the merchandise in question, it is unnecessary to discuss any other phase of plaintiff's proof along that line. On the matter of foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930, as amended, I find that plaintiff's proof falls far short of meeting the requirements of the statute. This phase of plaintiff's evidence is confined to the two affidavits (exhibits 1 and 2, *supra*), hereinabove reviewed in detail. While it is recognized that the method of offering evidence by means of affidavits is a right conferred by statute (U. S. C. § 2633), it must be borne in mind that the introduction of evidence through an affidavit does not "affect the substantive issue of whether the statements therein appearing constitute substantial evidence of the ultimate facts sought to be proved thereby." *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs)194, C. A. D. 593, citing with approval *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495. In the *Brooks Paper Company* case, *supra*, the appellate court, speaking through Johnson, J., discussed at length the evidentiary record introduced by affidavits and said:

> * * * "Evidentiary facts" must be found from the testimony or other evidence. "Ultimate facts" are reasoned conclusions drawn from the evidentiary facts.

*Commissioner of Internal Revenue* v. *Sharp et al.*, 91 F. (2d) 804, C. C. A. 3. Considered with reference to the facts or evidence by which they are established or proved, "ultimate facts" are but the logical results of the proofs, or, in other words, mere conclusions of fact reached by the processes of logical reasoning from the evidentiary facts. * * * The ultimate facts are the *issuable* facts without proof of which plaintiff cannot recover. *Maxwell Steel Vault Co.* v. *National Casket Co.*, 205 F. 515; see also *United States* v. *Smith*, 39 F. (2d) 851, C. C. A. 1.

The Supreme Court has defined "substantial evidence" as evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred. Substantial evidence, said the Court further, is such relevant evidence as a reasonable mind might accept as adequate support to a conclusion, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.*, 306 U. S. 292.

Under this test of substantial evidence we think it clear that a mere declaration of an essential ultimate fact in issue is not substantial evidence. As noted above, ultimate facts are to be deduced from evidentiary facts by inference, * * *, and are the issuable facts which a complainant must prove to prevail, *Steel Vault* case, *supra.* · This being the case, it seems clear that ultimate facts cannot at the same time also be the facts which afford a substantial basis of fact from which the fact in issue can be reasonably inferred. * * * [Italics quoted.]

Plaintiff's affidavits (exhibits 1 and 2, *supra*), considered in the light of the entire record herein and the principles expressed in the cited authorities, contain mere declarations of essential ultimate facts, without proper support therefor from evidentiary facts. The affidavits contribute nothing substantial toward a favorable conclusion for the values claimed by plaintiff.

Another defect in plaintiff's line of proof is its limitation to the business of Italfisa, the exporter of the accordions under consideration. There is some evidence before me to the effect that there were other manufacturers of accordions in the country of exportation of the present merchandise, at the time involved herein, but, on the basis of the record herein, which is silent with respect to the business of any other manufacturers of or dealers in accordions, it cannot be presumed that the business of the foreign exporter of the merchandise in question is representative of the course of trade followed in the principal markets of Italy by other dealers in accordions, such as or similar to those under consideration. *United States* v. *International Forwarding Co., Inc.*, 27 C. C. P. A. (Customs) 21, C. A. D. 56.

For all of the reasons hereinabove set forth, I find that the evidence adduced herein is insufficient to overcome the presumption of correctness that is attached to the appraised values of the accordions in question.

On the basis of the record before me, I find as matter of fact:

(1) That the merchandise in question consists of accordions exported from Italy and entered at the port of New York.

(2)    That the foreign exporter confines the sale of his merchandise for export to the United States to the plaintiff herein.

(3)    That the evidence relating to foreign value fails to establish the essential elements of the statutory definition of such value, as set forth in section 402 (c) of the Tariff Act of 1930, as amended.

Accordingly, I hold as matter of law:

(1)    That the evidence presented herein is insufficient to overcome the presumption of correctness which the statute (28 U. S. C. § 2633) attaches to the values found by the appraiser.

(2)    That the proper basis for appraisement of the accordions in question is export value, as defined in section 402 (d) of the Tariff Act of 1930, and that such statutory values are the appraised values.

Plaintiff having abandoned these appeals for reappraisement as to all other merchandise, the appeals are dismissed as to all items, except the accordions.

Judgment will be rendered accordingly.

At the hearing of this case, and immediately following plaintiff's presentation of his evidence, counsel for defendant moved for dismissal, as follows:

MR. AUSTER:    I move to dismiss the importer's appeal on the ground that he has failed to make out a prima facie case; that the only thing he has established, if anything, is the price at which the father shipped merchandise to the son, the son and father being partners in the business here in the United States.

The appraisements in the four appeals involved herein are governed by statutory provisions (28 U. S. C. § 2631) which direct that the court shall determine a value, notwithstanding that the original appraisement may for any reason be held invalid or void and that the merchandise or samples thereof be not available for examination. In view of that statutory mandate, which is controlling herein, the motion to dismiss is denied.